COMMONWEALTH of Pennsylvania, Appellee,

v.

Melissa A. ASKINS, Appellant.

Superior Court of Pennsylvania.

Submitted July 17, 2000.
Filed Oct. 18, 2000.

Hilary A. Kinal, Beaver, for appellant.

Dale M. Fouse, Asst. Dist. Atty., Beaver, for Com., appellee.

BEFORE: JOYCE, LALLY–GREEN and HESTER, JJ.

JOYCE, J.:

¶ 1 Appellant, Melissa A. Askins, appeals from the judgment of sentence entered following her conviction for the summary offense of cruelty to animals.[1] For the reasons set forth below, we affirm. The relevant facts and procedural history of this case are as follows.

¶ 2 On July 8, 1999, at approximately 3:40 p.m., at the behest of Appellant to remove a stray animal, Humane Society police officer John McGown, arrived at Appellant's residence. Upon his arrival, Officer McGown noted that Appellant's dog, Spazzy, had been tied to a chair by a cord which had become tangled. Near the dog, but not within its reach, was the dog's food and water. Noting that the dog would not be able to reach for the food or water absent serious injury, based on the length of the cord, the officer determined that the dog was in serious danger. Therefore, Officer McGown untangled the dog's cord and moved the food closer to the chair. Officer McGown left his card on the porch. Later that evening, Officer McGown returned to the home at 10:40

---

1. 18 Pa.C.S.A. § 5511(c).

p.m., observing that the dog had not been freed.

¶ 3 On August 10, 1999, the district magistrate found Appellant guilty of the summary offense. Appellant appealed to the court of common pleas on September 8, 1999. Thereafter, on January 27, 2000, at the *de novo* trial, the court found Appellant guilty of the offense, based on finding Officer McGown's testimony more credible. The court imposed a fine. This timely appeal followed.

¶ 4 Appellant raises the following issues for our review: (1) whether the evidence was sufficient to find her guilty of cruelty to animals when she had not placed the dog in the perilous situation; (2) whether the evidence that the dog could have moved in a position which may have caused strangulation was sufficient to sustain the conviction; (3) whether the evidence was sufficient to find her guilty of the offense absent any actual injury; and (4) whether Officer McGown violated her constitutional rights by photographing the scene absent a search warrant.

■ ¶ 5 Our standard of review in this case, where the court has heard the case *de novo,* is limited to whether the trial court committed an error of law and whether the findings of the trial court are supported by competent evidence; and the action of the lower court will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Gussey,* 319 Pa.Super. 398, 466 A.2d 219, 221 (1983). In Appellant's first three issues, which we will discuss simultaneously, she challenges the sufficiency of the evidence. The standard of review for a challenge to the sufficiency of the evidence is as follows:

> In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime

beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted). In each of Appellant's claims, Appellant requests that we reassess the trial court's credibility determinations. Pursuant to the standard, however, we may not disturb the credibility determinations of the trial court on review. Thus, we must solely limit our review to a consideration of the elements of the statute and the evidence presented.

¶ 6 In relevant part, 18 Pa.C.S.A. § 5511(c) states:

> **Cruelty to animals.**—A person commits a summary offense if he wantonly or cruelly illtreats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry.

18 Pa.C.S.A. § 5511(c).

■ ¶ 7 The testimony reflects that Humane Society Police Officer John McGown arrived at Appellant's residence at 3:40 p.m. on July 8, 1999, at Appellant's behest, to remove a stray animal. N.T., 1/27/00, at 5. Upon arriving, Officer McGown noted that nobody was present at the residence and that a dog, known to him as Spazzy, was left tied to a chair by a cord. *Id.* at 6.

Further, Officer McGown testified that the dog's cord had become tangled so that the dog could not safely reach for its food and water. *Id.* He determined that if the dog had tried to obtain the food or water, it would have been strangled. *Id.* Officer McGown thereafter proceeded to untangle the cord and placed the food closer to the dog so as to place the dog in a less dangerous position. *Id.* Despite leaving a card on Appellant's porch, upon his return at 10:40 p.m., Officer McGown noted that the dog remained in the same position. *Id.* at 7. Lastly, Officer McGown testified with certainty that Appellant was the dog's owner. *Id.* at 24. Under these circumstances, we cannot find that the evidence was insufficient to convict Appellant of the instant offense; and thus, find the trial court did not abuse its discretion.[2]

■ ¶ 8 Lastly, Appellant contends that Officer McGown violated her constitutional rights by photographing the scene absent a search warrant. Despite Appellant's argument, she fails to cite to any authority to support his claim. Accordingly, this issue is waived. *See Commonwealth v. Ellis*, 700 A.2d 948, 957 (Pa.Super.1997), *appeal denied*, 556 Pa. 671, 727 A.2d 127 (1998) (finding that an issue is waived when a party fails to cite to any authority to support the contention).

¶ 9 Assuming, *arguendo*, that this issue is not waived, we would find that no constitutional violation occurred. Appellant had no subjective expectation of privacy interest in the front porch of her home. Therefore, we must conclude that the trial court did not err. Finding no basis upon which to disturb the findings of the trial court, we affirm.

¶ 10 Judgment of sentence affirmed.

¶ 11 LALLY–GREEN, J., files dissenting statement.

---

2. Contrary to the position expounded in the dissent, it was not the entanglement of the leash in and of itself which created the perilous position for the dog. Rather, as indicated through the testimony of Officer McGown and the photo exhibits, it was the initial restraining of the dog with a leash too short in length

LALLY–GREEN, J., dissenting:

¶ 1 I respectfully dissent from the majority's determination that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for cruelty to animals. I do not believe that the record supports a conclusion that Appellant's action was cruel conduct to animals or that Appellant acted wantonly or cruelly.

¶ 2 The criminal statute at issue reads as follows:

**Cruelty to animals.**—A person commits a summary offense if he wantonly or cruelly illtreats, overloads, beats, otherwise abuses any animal, or neglects any animal as to which he has a duty of care, whether belonging to himself or otherwise, or abandons any animal, or deprives any animal of necessary sustenance, drink, shelter or veterinary care, or access to clean and sanitary shelter which will protect the animal against inclement weather and preserve the animal's body heat and keep it dry. This subsection shall not apply to activity undertaken in normal agricultural operation.

18 Pa.C.S.A. § 5511(c).

¶ 3 When construed in the light most favorable to the Commonwealth, the record reveals that Humane Society Officer McGown arrived at Appellant's house at approximately 3:40 p.m. and found Appellant's dog tied to a chair on the front porch. Food and water were on the porch. The dog had become entangled in its own leash so that the dog could not reach the available food or water. Also, the dog could have choked if it had attempted to reach the food or water. The officer untangled the leash and placed the food and

---

to allow the animal to safely reach the food which had been placed at a dangerous distance from the leashed animal which created the peril. It was this initial conduct that we find to be in violation of the delineated statute.

water closer to the dog. At approximately 10:40 p.m. that evening, Officer McGown drove past the house and observed that the dog was tied to the chair, but "was not tangled to where it couldn't reach the water." N.T., 1/27/2000, at 7. Appellant was not home at 3:40 p.m. or at 10:40 p.m.

¶ 4 First, I am unsure which aspect of subsection 5511(c) Appellant is alleged to have violated. If Appellant is guilty of neglecting or abandoning her dog, then such should be specifically addressed. It appears that Appellant was found guilty of depriving her dog of necessary sustenance or drink because the dog could not reach the food and water after it became tangled in the leash.

¶ 5 The record does reflect that Appellant provided her pet with food and drink throughout the entire day in question. The record reflects no claim that her leashing of the dog was cruel. Is the condemned conduct one of omission, i.e., that Appellant failed to foresee the risk that the dog would become tangled in the leash and not be able, one point in the day, to reach the food and drink? And, if so, what should Appellant have done? Leash the dog with a shorter leash?

¶ 6 Pets are often leashed to an object during the absence of an owner. This is done to prevent the pet from freely running through the neighborhood. The leashing often permits the pet some space to move around. Otherwise, the pet may strain unreasonably at the neck because it wants or needs to move. The risk of allowing some movement is that the pet may become tangled in the leash and be unable to reach to places like the location of food and water. The risk of a tight leashing is to permit such little movement that the pet may hurt itself as it strains to move. Who can reasonably say one method or the other is cruel and wanton? It appears that both are reasonable methods of leashing a pet dog in light of certain risks. Thus, I believe that the record fails to reflect conduct that constitutes a violation of the statute.[3]

¶ 7 Second, I address the intent element. The statute appears to require a demonstration of "wantonness" or "cruelty." The majority cites, and I have found, no case law indicating the requisite mental state under this subsection. Here, Appellant placed food and water on the front porch for her dog. This fact suggests that Appellant took steps to care for her pet. Her pet became entangled in its leash and could not reach its food and water at 3:40 p.m.

¶ 8 Even if the requisite mental state is recklessness, such a mental state is not borne out by the record. At worst, it would appear that Appellant was negligent (and not criminally negligent) for failing to anticipate the fact that her dog could become entangled and unable to reach the nourishment that she had provided.

¶ 9 I deplore cruelty to animals. This is not a case where the owner intentionally beat her dog or intentionally neglected to provide food or drink for her dog. Rather, it is a case where a common incident, i.e., a pet becoming entangled in its own leash, is used to criminalize conduct that was negligent at best. I am constrained to conclude that the record fails to establish that Ap-

3. The record also fails to reflect that the dog suffered harm. The focus of the statute appears to be on the abuse of animals. This abuse can be shown where an animal is ill treated, neglected, abandoned or deprived of food and drink.

Here, the record reveals that at one point in time (3:40 p.m.), Appellant's dog could not reach food or water because he was tangled in his leash. The Commonwealth did not, however, establish that the dog was dehydrated or starving or that Appellant deprived the dog of food or drink for any particular length of time. Indeed, when Officer McGown arrived at Appellant's home at 10:40 p.m., the dog had access to water. Officer McGown did not testify as to whether food was accessible. In other words, with the exception of the 3:40 p.m. incident, no evidence of record existed that the dog lacked access to food or water for any appreciable time. The evidence fails to demonstrate that the pet suffered harm.

pellant committed such a crime. As such, I respectfully dissent.